IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 AUG 31 A 9: 28

| | |
|---|---|
| DEAN EFFARAGE FARROW, 111719 ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | 2:06-CV-360-ID |
| ) | |
| DONALD CAMPBELL, *FORMER COMMISIONER*, ET. AL. ) | |
| DEFENDANTS) | |

### PLAINTIFF'S RESPONSE AND AFFADAVIT

Comes now the Plaintiff, Dean Effarage Farrow (Farrow), and respectfully respond to this Honorable Court's Order of August 10, 2006 and to the Defendants' "SPECIAL REPORT".

However, Donald Campbell, Former Commissioner of Alabama Department Of Corrections (ADOC) – Defendant- has failed to respond to this Honorable Court's Order of May 26,2006 (See attached " MOTION OF DEFAULT").

Also, Farrow is respectfully requesting this Honorable Court to allow this form of document assertion- to show that the Defendants committed the oncoming described acts with complete disregard toward the United States Constitution; rights proscribed to protect residents in Her (The United States') jurisdiction, including state inmates (such as Farrow) from unlawful acts and/or unconstitutional authoritative abuse of person(s) and power; specifically, those actions and lack of actions which violated the *First Amendment Right–* and relative "et cetera" rights- **guaranteed** Farrow - while Farrow was in the custody of the Defendants.

As grounds for these respectful document assertion Farrow hereby submit the oncoming numerical response.

### 1. INTRODUCTION

1

As of July 10, 2006 Farrow was place on parole status, and is currently residing in the City Of Tallassee, Alabama.

Farrow shall show that the Defendants exhibit blatant disrespect for this Honorable Court's jurisdiction in this matter, and Farrow's complaint in this styled cause have genuine issues of material facts; therefore, the Defendants are not entitled to summary judgement.

In like manner, Farrow shall show that the Defendants are committing the act of perjury while swearing to know little and/or nothing about Farrow's complaint, and that the Defendants are committing the act of perjury by entering "not guilty" pleas.

Farrow shall prove that a 42 USC Section 1983 is the proper course of action in this matter.

Farrow hereby submit the following statement/affidavit; documented evidence; and case citing/law in support of Farrow's complaint (See EXHIBITS).

Congruently, the following are the facts of this case. However, the following is submitted as a matter of necessity, in order to secure Farrow's complaint against the proper Defendants, and to show the justification of Farrow's complaint. (See Motion To Amend Jane/John Doe – Defendants)

## 1. PLAINTIFF'S RESPONSE

Farrow hereby swears under penalty of perjury that the following listed occurrences and unconstitutional violations against Farrow were unlawfully and unconstitutionally harmful to Farrow by the Defendants. The Defendants disregarded Farrow's efforts to avoid the said violations, and did the latter said with an absolute disregard to Farrow's efforts to avoid bringing this matter before this Honorable Court *long before* this matter reached this junction.

*DEFENDANTS' RESPONSE:*
…*"1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint, as amended and demand strict proof thereof."*…

1. **FARROW STATES…** During December 7, 2000 until May 2005 Farrow filed and pleaded a 42 USC Section 1983 Civil Action Complaint against certain ADOC's employees (namely, certain Correctional Medical Services Incorporated – CMS's employees). (See Westlaw 320 F. 3d 1235)

The above said complaint remained active in this Honorable Court until May of 2005 – with the Defendants consistently trying to avoid a jury trial, before an agreement was forced/ *entered* [1] during the latter said month. '

However, Farrow's First Amendment right- to be free from retaliation for exercising free speech- was violated consistently, and was complained about to both Farrow's attorney and ADOC's Officials consistently by Farrow.

The Defendants made a mockery out of Farrow's mental state, once said agreement was forced entered, by saying and pretending Farrow's fears and concerns for Farrow's safety and well being were the product of a mental disorder instead of the product of the Defendants' actions toward Farrow.

However, the Defendants – while submitting a host of inadmissible evidence to Farrow and this Honorable Court – submitted all of Farrow's mental health record, but were certain to submit misleading mental health documents with out- of- date medical record in this lawsuit.

To be more specific, the Defendants forward a number of up- to- date mental health medical record – with the out- of- date bundle of medical record submitted with the Defendants' frivolous response to Farrow's complaint.

Namely, the Defendants submitted an honest and adequate response with a complete set of up- to- date file of Farrow's mental heath records - compiled by the *PSYCHIATRIST (?)* at the Kilby Correctional Facility (whose name is unknown by Farrow); Dr. Banerjee, Psychiatrist, and Dr. Brun, Clinical Psychologist of Easterling Correctional Facility during or between April 19,2005 and July 10, 2006. (See **EXHIBIT-*Mental Health Record*).

However, because Farrow can't make a standing colorable supplementary response toward the Defendants' use of Farrow's out- of- date medical record -and neither can Farrow do the latter said by using record beyond the two-year statue of limitation -Farrow is helpless other than to recline from addressing irrelevant matters; thus, stating the same is inadmissible evidence for the Defendants to submit in this Honorable Court – especially without a justifiable cause.

Nevertheless, Farrow has a set of admissible recorded evidence that is compatible to the admissible portion of the record the Defendants submitted, and Farrow has record that the Defendants failed to submit to this Honorable Court – that the Defendants' lies and blatant disrespect for the United States Constitution and this Honorable Court may cease at this junction (See **EXHIBIT-*Letters To The Warden & Commissioner*).


*DEFENDANTS' RESPONSE:*
*2. The Defendants plead not guilty to the charges in the Plaintiff's Complaint, as amended."...*

---

[1]Farrow submitted adequate concerns about the said violations to the said Defendants long before this junction. Moreover, the evidence will show before and after Farrow was deceived, intimidated into entering and accepting the terms of an unlawful settlement agreement – referring to the December Complaint- the Defendants refused to adequately respond to and/or take action to protect Farrow from said violations.

3

2. **FARROW STATES...** Farrow is a type-two diabetic, and Farrow health requires that he have dental care at least once a year. However, because of the increase in the negative responses Farrow received from <u>former **CMS's employees – those of whom were assigned to the Easterling Correctional Facility-**</u> upon Dr. Marvin West return to Easterling Correctional Facility as an employee of PHS, Farrow was denied transfer and/or options to see another dentist. Neither was Farrow afforded an opportunity to visit a dental hygienist outside of Dr. Marvin West's presence because Farrow filed a law suit against said; thus, stating a retaliation claim against the Defendants. Notwithstanding the fact that the said dentist tried to avoid a jury trial for several long years while Farrow was being systematically retaliated against, Farrow's fears were of a legitimate origin. Though it seemed the Defendants found pleasure in tormenting Farrow for filing said lawsuit, Farrow is confused as to how such as the Defendants can lie – **IN THE EYES OF GOD AND MAN – about** the Defendants' awareness of Farrow's mental state, serious medical needs, and the Defendants' actions and lack of actions against Farrow for filing said lawsuit.
3. When Farrow requested a temporary transfer for the sole purpose of dental treatment, by a request made to Captain Knox, Captain Knox told Farrow that he wasn't special; plus, ADOC didn't have the time or manpower to carry Farrow to see another dentist. Captain Knox further stated that he didn't believe that Dr. West would do anything to jeopardize his future messing with Farrow.
4. Nevertheless, Farrow filed a legitimate civil complaint against Dr. West for unlawful and deliberate indifference to Farrow serious medical needs prior to said request. Said complaint was pending after being remanded from the United States Court Of Appeals For The Eleventh Judicial Circuit, and was headed for trial in this Honorable Court before the Defendants intensified their acts of illegal and unconstitutional retaliation against Farrow for filing the same said lawsuit.
5. Farrow was absolutely afraid to accept treatment from and in the presence of Dr. Marvin West, and it was made clear to the Defendants how Farrow feel, mentally. (*Examine* EXHIBITS- *where on many occasions Farrow made the Defendants aware of Farrow's situation and Farrow's serious medical needs and Farrow's predicament*).

DEFENDANTS RESPONSE:
"3. *The Plaintiff's Complaint, as amended failed to state a claim against the Defendants for which relief can be granted.*

4. *The Defendants affirmatively deny any and all alleged claim by the Plaintiff.*

5. *The Plaintiff is not entitled to any relief requested in the Complaint, as amended.*"...

3. **FARROW STATES...** The Plaintiff (Farrow) was participating in a number of ADOC's rehabilitative programs prior to and during the process of the said civil

action, and Farrow resided at the Easterling Correctional Facility from June 1999 until April 18, 2005. During April 18, 2005 Farrow was transferred to the Kilby Correctional Facility on the pretext that Farrow was to appear in this Honorable Court. However, the evidence shows that Farrow was transferred for the reclusive purpose of retaliating against Farrow for filing said lawsuit, and that Farrow was transferred to the said facility for the reclusive purpose to intimidate, threaten, and lied about to other ADOC Officials and fellow inmates (See EXHIBIT - Accomplishments).

4. Farrow saw a different dentist performing dental services on an inmate patient, so Farrow placed a " sick call" request to see the dentist while at Kilby Correctional Facility. Farrow was not reluctant neither afraid to see other dentists outside of Dr. Marvin West presence. However, Farrow was denied treatment because he wasn't a member of the "permentnant party staff of inmates assigned to the latter said facility. ( See **EXHIBITS** - Medical Request Forms )

5. Shortly – within days- after Farrow was denied an opportunity to have Farrow's lower removable partial denture replaced outside of the presence of Dr.Marvin West, Farrow was summoned to the Dental Laboratory in the same and latter said facility. Upon Farrow's arrival at said laboratory, ADOC's Correctional Officer Caldwell requested information from Farrow and ordered Farrow to enter said dental laboratory. Farrow obeyed said order.

### THE FOLLOWING IS FARROW RESPONSE TO THE DEFENDANTS' FRIVOLOUS AND MALICIOUS DEFENSE FROM CLAIMS #6 THROUGHT CLAIM #31- BECAUSE A 42 USC SECTION 1983 CIVIL COMPLAINT IS THE TRUE CAUSE AND COURSE OF ACTION IN THIS MATTER.

6. Upon entering said laboratory Farrow encountered an[2] **unidentified female of Negroid decent- dental hygienist; Dr. Marvin West, Dentist, and another male of Negroid decent. Farrow did not believe the environment to be a safe environment because of the unkind stares Farrow received from the other said persons.**
Dr. West appeared to be having a conversation with the unidentified male [3], and **the said dental hygienist pointed to a chair and told Farrow – in an unkind tone of voice – to " sit down!" Farrow sat in the chair the said dental hygienist told Farrow to sit in. Once Farrow was seated, the said dental hygienist gave Farrow a consent form to sign. The said dental hygienist told Farrow to read the consent form and sign it.**

---

[2] The reference made toward gender and race is for identification purposes only.
[3] The unidentified male's name is reportedly Mr. Lawrence, Activity Director/ Coordinator (?) for Mental Health Management Inc., and the unidentified woman's name is said to be, Helen Ross, RPH. ( See Medical Record )

Farrow read the consent form.
Nevertheless, Farrow did not approve of the agreement in the consent form – which basically said that if any unpleasant thing (including death) should happen to Farrow during said agreement the Defendants could not be held liable, so Farrow requested a " waiver"[4] (a Release of Responsibility Form) because Farrow was afraid to accept treatment in the presence of Dr. West and given the language of the consent form.
In like manner, Farrow was afraid of the looks and behaviors of the said three persons in the said dental laboratory.

7. She (the dental hygienist / Helen Ross -? -) spoke with Dr. West about something, and Dr. West told her to look in the second desk draw of the first desk (the first desk one shall come near upon entering the said laboratory). She did as he (Dr. West) instructed her. She looked in said desk draw, retrieved a "waiver"[4], and gave it to Farrow to sign. Farrow used the latter said desk for writing support.
8. While completing said form, Farrow begun to complete the section of the form which read, " Comment/reason(s):". The said dental hygienist told Farrow not to fill- out that section of the form, and then she snatched the said form, and she told Farror – *IN THE EYESIGHT OF THE LORD GOD JEHOVAH; in the eyesight of FARROw; in the eyesight of DR.WEST, and in the eyesight of the man referred to as MR. LAWRENCE-saying,* "Don't write in that section! I'll complete that section because I don't want that trash on my record!"
9. She tore the latter said form- up, threw it in the trash container, reached in the desk draw, and retrieved another of the same said form – a " waiver".
10. She told Farrow she was giving Farrow another (waiver) form, but explained to Farrow that she did not want Farrow to complete the form-properly. She said to Farrow, " Just sign it, and if you don't want to sign it you may leave! I'll sign it!" ( See EXHIBIT- Medical Record – Waivers)
11. It – the said occurrence – frightened Farrow to the point that Farrow made long distance phone calls to Farrow's Attorney, Scott Smith, Mother, and other Family Members explaining the problem and Farrow's fears for Farrow's life.
12. Meanwhile, during Farrow's conversation with Farrow's Attorney, Farrow discovered upon the date of Farrow's transfer from Easterling that Farrow had been scheduled to received legal mail from Farrow's Attorney.
13. The terms of the settlement agreement were in said mail. However, the Defendants did not want Farrow to have an opportunity to study said agreement before they could utilize a forged opportunity to intimidate, threaten, divert Farrow attention from said legal matter.
14. The terms of the agreement are totally unacceptable, and in violation of Farrow's First Amendment right to be free from unconstitutional and unlawful retaliation for bringing a legitimate civil complaint to this Honorable Court and/or any Honorable Court in the United States' Jurisdiction.
15. However, Farrow did not know the terms of the agreement because the mail clerk at Easterling withheld Farrow's legal mail for approximately a month, and

---

[4] Most Alabama Inmates refer to a *Release Of Responsibility Form as a "Waiver"*

it was on the day Farrow was illegally retaliated against by the said dental hygienist that Farrow learned of the settlement agreement proposed by Dr. West's attorney.

16. Farrow was intimidated into accepting the *terms of* the said agreement, and Farrow's attorney had been convinced that Farrow would likely be given parole shortly after said agreement. However, the agreement was an unlawful act of retaliation and a trap because Farrow was denied parole shortly thereafter said agreement was entered, and Farrow had been convinced by Farrow's Attorney that Dr. West and Dr. West's associates would cease the intimidation, slanderous intimidation, threats against Farrow's well being.

17. Therein and thereafter Farrow encountered unlawful and unconstitutional acts of retaliation from the Defendants of this present cause of action, and the latter said acts were directed toward Farrow by each of the Defendants while serving in their individual capacities and acting under color of state and federal law.

18. After filing a medical complaint against the said dental hygienist, and receiving her untrue statement about what she had done in the dental laboratory, Farrow realized more that Farrow's concerns were very legitimate, and the more Farrow sought help the more Farrow was mocked and intimidated by the Defendants and other inmates.

19. Because Farrow requested relief from the Former Commissioner and the Warden, their awareness of Farrow's situation and failure to respond eliminated any immunity statute they choose to argue. Each- in fact- violated Farrow's First Amendment Right while serving in their individual capacities and acting under color law. ( SEE EXHIBIT-*LETTER TO THE ADOC'S FORMER COMMIONER AND WARDEN OF EASTERLING CORRECTIONAL FACILITY)*

20. During Farrow's residency at the Kilby Correctional Facility – between April 19, 2005 and August 22, 2005 - Faro attended two Alcohol Anonymous/ Narcotic Anonymous' meetings. The first meeting was fair, but during the second meeting Farrow was harassed by inmate gang members throwing "spit- balls", saying, "Sue me niggar!" Because of the intimidation Farrow didn't attend any other meetings at said facility.

21. Farrow received a parole review while at the said facility, but was denied parole.

22. Farrow was transferred back to the Easterling Correctional Facility during August 22, 2005, But Farrow was not placed in the *recommended substance abuse program (" Continual Care") because there were not any beds available;* however, after making several verbal and written requests to reenter the said program, Farrow was readmitted to the Continual Care Program.

23. Farrow was placed in Dormitory #9/B – Bed #52- during the earlier week of September 2005 , where an inmate by the name of Coleman insistently tried to provoke Farrow into a physical artercation by loudly calling Farrow names Such as the names often given to homosexual in the said facility. Farrow is a heterosexual, so Farrow reported this incident to the dormitory leader (Inmate Gray)- as Farrow had been instructed to do whenever Farrow were to find

Farrow in a situation that has a threat violence... per Mr. Wagner (ADOC's Correctional Officer assigned the job of coordinating the said program.

24. There were not any action taken during nor after said encounter with Inmate Coleman.

25. Later during the later weeks of the said month, the bed were rearranged; thus placing Farrow's and Coleman's beds[5] in a lesser viewing area - away from ADOC's Cubical Officer's view of the dormitory.

25. Coleman repeated the said behavior of trying to provoke Farrow into a violent confrontation. Farrow was summoned to diabetic pill call[6] Farrow closing of a metal locker box (attached to the said bed) made a noise that awakens Coleman by accident. The encounter lead to Faro saying to Coleman, "Who are you talking to? Get down off that bed and handle your business – Whatever- If you hit me I' m going to do something to you."

26. The latter said encounter lead to ADOC Officers getting involved, and Farrow and Coleman were sent to the third Shift- Shift Commander's (Sgt. Bryant's) Office.

27. Sgt. Bryant, once he'd arrived in said office, asked Farrow and Coleman to give each Farrow and Coleman version of the said encounter. Coleman lied about the incident, but Sgt. Bryant said it didn't matter because Farrow and Coleman could be lying as for as he was concern.

28. He ask Farrow and Coleman what did Farrow and Coleman think he (Sgt. Bryant) should do about the situation, and he gave Farrow and Coleman a choice of going to segregation units or signing a living agreement. Farrow asked for a bed change because Farrow needed the said program for a favorable parole review. Sgt. Bryant gave Farrow and Coleman blank living agreement forms to sign, but said, " Don't fill in the blanks. I'll do that later."

29. Sgt. Bryant agreed to give Farrow a bed change, and assigned Farrow bed #9B /114.

30. Upon Mr. Wagner's return to work, Mr. Wagner suspended Farrow and Coleman from the said program for 90 days. Even after Farrow requested a hearing regarding the said encounter, Mr. Wagner refused to hear the matter, saying: A- DOC Officer was involved, and that was sufficient enough reason for him (Mr. Wagner) to suspend Farrow from the program, and that was exactly what he intended to do.

31. Thus, Farrow's bed assignments continued to place Farrow near known violent inmates with disciplinary history for the said, and for the reclusive purpose of retaliating against Farrow for filing said lawsuit.

32. When Farrow requested a copy of the said living agreement both the Warden and Sgt. Bryant refused to give Farrow a copy, though it was sufficient enough to have Farrow suspended from the said program, and to become another act of illegal retaliation- while the said Defendants acted in each of their individual capacity and under color of law.

33. Farrow did not experience any of these problems prior to filing said lawsuit (S*eeEXHIBITS –FARROW ACCOMPLISHMENTS).*

---

[5] ADOC usually assign inmates bunk beds – even numbered beds indicate the assigned bed is a bottom bed, and odd numbered beds indicate the assigned bed is a top bed.

Submitted this 29th day of August 2006

*<u>DEAN EFFARAGE FARROW, 111719</u>*
*PLAINTIFF*

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Dean Effarage Farrow, 111719
  P. O. Box 78032
Tallassee, Alabama 36078

CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon:

1.  OFFICE OF THE CLERK
    UNITED STATES DISTRICT COURT
      P. O. BOX 711
    MONTGOMERY, ALABAMA 36101-O711

2.  DONALD CAMPBELL, FORMER COMMISSIONER
    101 SOUTH UNION STREET
    MONTGOMERY, ALABAMA 36104

3.  GWENDOLYN MOSLEY, WARDEN;
4.  CAPTAIN KNOX ; and
5.  SEGEANT BRYANT
    EASTERLING CORRECTIONAL FACILITY
     200 WALLACE DRIVE
    CLIO, ALABAMA 36017

6.  L. LAWERECE,RN-HSA
    KILBY CORRECTIONAL FACILTY
       P. O. BOX 150
    MOUNT MEIGS, ALABAMA 36057

7.  STATE OF ALABAMA
    ATTORNEY GENERAL
    11 SOUTH UNION STREET
    MONTGOMERY, ALABAMA 36130-0152

2

8. ALABAMA DEPARTMENT OF CORRECTIONS
   LEGAL DIVISION
     P. O. BOX 301501
   301 SOUTH RIPLEY STREET
   MONTGOMERY, ALABAMA 36130- 1501


By placing a copy of the for going to each of the said in the United States Mail, properly postaged , and properly addressed this 29th day of August, 2006.

                                          _____
                                          DEAN EFFARAGE FARROW, 111719
                                                    PLAINTIFF