IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 SEP -7  A 10: 13

DEAN EFFARAGE FARROW, 111719 )
        PLAINTIFF      )
                                )
V.                              ) 2:06-CV-360-ID
                                )
DONALD CAMPBELL, ET AL.,    )
        DEFENDANTS    )

## MOTION TO AMEND AND/OR REENTER PLAINTIFF'S SUPPLEMENTAL RESPONSE

Comes now the above said Plaintiff (Farrow) and with great respect request this Honorable Court to allow Farrow to resubmit into evidence copies of the letters Farrow forward to the Defendants (Gwendolyn Mosley, Warden of the Easterling Correctional Facility, and Donald Campbell, Former Commissioner of the Alabama Department Of Corrections, with receipts).
 In like manner, Farrow respectfully request this Honorable Court to grant Farrow an opportunity at this junction to correct a damaging ***clerical error***.
 As grounds for these respectful requisitions Farrow states the following.

1. The copies of the letters Farrow forward to the Defendants is a crucial exhibit toward proving the Defendants were aware of Farrow's predicament, but failed to respond before this cause of action reached this Honorable Court.
2. Farrow's **Motion For Default Judgement** was supported and submitted with a **Certificate Of Service**. The remaining documents forward to this Honorable Court during August 29, 2006 were responses to this Honorable Court's Order of August 10, 2006, and evidence to support Farrow's response against the Defendants' ***"Special Report"***.
3. Farrow accidentally submitted an incorrect quotation from Farrow's rough draft of Farrow's response to this Honorable Court's Order and the Defendants' ***Special Report***; Therefore, Farrow submit the following facts in corrections of said error.

8. While completing said form, Farrow begun to complete the section of the form which read, " ...am refusing to accept the following treatment/recommendations:..."[4a]

9. The said dental hygienist told Farrow not to fill- out that section of the form, and then she snatched the said form, and she told Farror – *IN THE EYESIGHT OF THE LORD GOD JEHOVAH; in the eyesight of FARROW; in the eyesight of DR. WEST, and in the eyesight of the man referred to as MR. LAWRENCE-saying,* "Don't write in that section! I'll complete that section because I don't want that trash on my record!"

10. She tore the latter said form- up, threw it in the trash container, reached in the desk draw, and retrieved another of the same said form – a " waiver".

11. She told Farrow she was giving Farrow another (waiver) form, but explained to Farrow that she did not want Farrow to complete the form-properly. She said to Farrow, " Just sign it, and if you don't want to sign it you may leave! I'll sign it!" ( See EXHIBITS - Medical Record –"'waivers"- Release Of Responsibility)

12. It – the said occurrence – frightened Farrow to the point that Farrow made long distance phone calls to Farrow's Attorney, Scott Smith, Mother, and other Family Members explaining the problem and Farrow's fears for Farrow's life.

13. Meanwhile, during Farrow's conversation with Farrow's Attorney, Farrow discovered upon the date of Farrow's transfer from Easterling that Farrow had been scheduled to received legal mail from Farrow's Attorney.

14. The terms of the settlement agreement were in said mail. However, the Defendants did not want Farrow to have an opportunity to study said agreement before they could utilize a forged opportunity to intimidate, threaten, and divert Farrow attention from said legal matter.

15. The terms of the agreement are totally unacceptable, and in violation of Farrow's First Amendment right to be free from unconstitutional and unlawful retaliation for bringing a legitimate civil complaint to this Honorable Court and/or any Honorable Court in the United States' Jurisdiction.

16. However, Farrow did not know the terms of the agreement because the mail clerk at Easterling withheld Farrow's legal mail for approximately a month, and it was on the day Farrow was illegally retaliated against by the said dental hygienist that Farrow learned of the settlement agreement proposed by Dr. West's attorney.

17. Farrow was intimidated into accepting the *terms of* the said agreement, and Farrow's attorney had been convinced that Farrow would likely be given parole shortly after said agreement. However, the agreement was an unlawful act of retaliation and a trap because Farrow was denied parole shortly thereafter said agreement was entered, and Farrow had been convinced by Farrow's Attorney

---

[4a] The above and aforementioned quotation is the correct quotation from the said waiver (Release Of Responsibility Form). The indicated quotation submitted to the Honorable United States District Court For the Middle District Of Alabama Northern Division in Farrow's response (of August 29, 2006) is a statement accidentally overlooked and incorrectly submitted from a rough draft of Farrow's Supplementary Response to the Defendants' Special Report in this cause of action.
 Nevertheless, Farrow hereby swears *IN THE EYESIGHT OF THE LORD GOD JEHOVAH* Farrow's testimony is true.

that Dr. West and Dr. West's associates would cease the intimidation, slanderous intimidation, and threats against Farrow's well being.

18. Therein and thereafter Farrow encountered unlawful and unconstitutional acts of retaliation from the Defendants of this present cause of action, and the latter said acts were directed toward Farrow by each of the Defendants while serving in their individual capacities and acting under color of state and federal law.

19. After filing a medical complaint against the said dental hygienist, and receiving her untrue statement about what she had done in the dental laboratory, Farrow realized more that Farrow's concerns were very legitimate, and the more Farrow sought help the more Farrow was mocked and intimidated by the Defendants and other inmates.

20. Because Farrow requested relief from the Former Commissioner and the Warden, their awareness of Farrow's situation and failure to respond eliminated any immunity statutes they choose to argue. Each- in fact- violated Farrow's First Amendment Right while serving in their individual capacity and acting under color law. ( SEE EXHIBITS -*LETTER TO THE ADOC'S FORMER COMMIONER AND WARDEN OF EASTERLING CORRECTIONAL FACILITY*)

21. During Farrow's residency at the Kilby Correctional Facility – between April 19, 2005 and August 22, 2005 - Farrow attended two Alcohol Anonymous/ Narcotic Anonymous' meetings. The first meeting was fair, but during the second meeting Farrow was harassed by inmate gang members throwing "spit-balls", saying, "Sue me niggar!" Because of the intimidation Farrow didn't attend any other meetings at said facility.

22. Farrow received a parole review while at the said facility, but was denied parole.

23. Farrow was transferred back to the Easterling Correctional Facility during August 22, 2005, But Farrow was not placed in the *recommended substance abuse program (" Continual Care") because there were not any beds available;* however, after making several verbal and written requests to reenter the said program, Farrow was readmitted to the Continual Care Program.

24. Farrow was placed in Dormitory #9/B – Bed #52- during the earlier week of September 2005 , where an inmate by the name of Coleman insistently tried to provoke Farrow into a physical artercation by loudly calling Farrow names, such as the names often given to homosexual in the said facility.

*Farrow is a heterosexual human male.*

Farrow reported this incident to the dormitory leader (Inmate Gray)- as Farrow had been instructed to do whenever Farrow were to find Farrow in a situation that has a threat of violence… per Mr. Wagner (ADOC's Correctional Officer assigned the job of coordinating the said program).

25. There were not any action(s) taken neither during nor after said encounter with Inmate Coleman.

Later during the later weeks of the said month, the bed were rearranged; thus

placing Farrow's and Coleman's beds[5] in a lesser viewing area - away from ADOC's Cubical Officer's view of the dormitory.

26. Coleman repeated the said behavior of trying to provoke Farrow into a violent confrontation. Farrow was summoned to diabetic pill call.[6]
27. Farrow, while closing of a metal locker box (attached to the said bed) made a noise that awakens Coleman by accident. The accident, or unavoidable noise made when metal touch metal, gave Coleman the opportunity to call Farrow a list of profane names in a loud and provocative tone, and Coleman took advantage of the opportunity.
28. The encounter lead to Farrow saying to Coleman, "Who are you talking to? Get down off that bed and handle your business – Whatever! If you hit me I' m going to do something to you."
29. The latter said encounter lead to ADOC Officers getting involved, and Farrow and Coleman were sent to the 3rd Shift- Shift Commander's (Sgt. Bryant's) Office.
30. Sgt. Bryant, once he'd arrived in said office, asked Farrow and Coleman to give each Farrow and Coleman versions of the said encounter. Coleman lied about the incident, but Sgt. Bryant said it didn't matter because Farrow and Coleman both could be lying as for as he was concern.
31. He ask Farrow and Coleman what did Farrow and Coleman think he (Sgt. Bryant) should do about the situation, and he gave Farrow and Coleman a choice of going to segregation units or signing a living agreement. Farrow asked for a bed change because Farrow needed the said program for a favorable parole review. Sgt. Bryant gave Farrow and Coleman blank living agreement forms to sign, but said, " Don't fill in the blanks. I'll do that later."
32. Farrow felt pressured to sign the blank form, too, because Farrow knew Farrow was being "setup" for filing a 42 USC Section 1983 Civil Action Complaint against said CMS's employees.
33. Sgt. Bryant agreed to give Farrow a bed change, and assigned Farrow bed #9B /114.
34. Upon Mr. Wagner's return to work, Mr. Wagner suspended Farrow and Coleman from the said program for 60 days. Even after Farrow requested a hearing regarding the said encounter, Mr. Wagner refused to hear the matter, saying: an ADOC Officer was involved, and that was sufficient enough reason for him (Mr. Wagner) to suspend Farrow from the program, and that was exactly what he intended to do.
35. Thus, Farrow's bed assignments continued to place Farrow near known violent inmates with disciplinary history for the said, and for the reclusive purpose of retaliating against Farrow for filing said lawsuit.
36. When Farrow requested a copy of the said living agreement both the Warden and Sgt. Bryant refused to give Farrow a copy, though it was sufficient enough to have Farrow suspended from the said program, and to become another act of illegal retaliation- while the said Defendants acted in each of their individual capacity and under color of law.

---

[5] ADOC usually assign inmates bunk beds – even numbered beds indicate the assigned bed is a bottom bed, and odd numbered beds indicate the assigned bed is a top bed.

37. Farrow did not experience any of these problems prior to filing said lawsuit (See *EXHIBITS –FARROW ACCOMPLISHMENTS*).

Submitted this 6th day of September 2006

*Dean E. Farrow* //1719
__DEAN EFFARAGE FARROW, 111719__
PLAINTIFF

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Dean Effarage Farrow, 111719
  P. O. Box 780032
Tallassee, Alabama 36078

CERTIFICATE OF SERVICE

 I certify that I have served a copy of the foregoing upon:

1. OFFICE OF THE CLERK
   UNITED STATES DISTRICT COURT
     P. O. BOX 711
   MONTGOMERY, ALABAMA 36101-O711

2. DONALD CAMPBELL, FORMER COMMISSIONER
   101 SOUTH UNION STREET
   MONTGOMERY, ALABAMA 36104

3. BETTIE J. CARMACK (CAR-132)
   ASSISTANT ATTORNEY GENERAL
   11 SOUTH UNION STREET
   MONTGOMERY, ALABAMA 36130
   ATTORNEYS FOR
   GWENDOLYN MOSLEY, WARDEN;
   CAPTAIN KNOX; and
   SEGEANT BRYANT

4. L. PEYTON CHAPMAN, III
   ALABAMA STATE BAR NUMBER CHA060
   R. BRETT GARRETT

ALABAMA STATE BAR NUMBER GAR085
ATTORNEYS FOR DEFENDANTS LINDA LAWRENCE
R.N., H.S.A. AND DR. MARVIN WEST.

RUSHTON, STAKELY, JOHNSTON &
GARRETT, P.A.
POST OFFICE BOX 270
MONTGOMERY, ALABAMA 36101-0270

5. ALABAMA DEPARTMENT OF CORRECTIONS
   LEGAL DIVISION
   P. O. BOX 301501
   301 SOUTH RIPLEY STREET
   MONTGOMERY, ALABAMA 36130- 1501

By placing a copy of the for going to each of the said in the United States Mail, properly postaged, and properly addressed this 6th day of September, 2006.

_____
DEAN EFFARAGE FARROW, 111719
PLAINTIFF