IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 SEP -7 A 10: 13

DEAN EFFARAGE FARROW, 111719          )
      PLAINTIFF                            )
                                       )
                                       )
V.                                      )    2:06-CV-360-ID
                                       )
DONALD CAMPBELL, ***FORMER COMMISIONER*** , ET. AL. )
      DEFENDANTS)

## PLAINTIFF'S RESPONSE AND AFFADAVIT

 Comes now the Plaintiff, Dean Effarage Farrow (Farrow), and respectfully respond to this Honorable Court's Order of August 10, 2006 and to the Defendants' "SPECIAL REPORT".

 However, Donald Campbell, Former Commissioner of Alabama Department Of Corrections (ADOC) – Defendant- has failed to respond to this Honorable Court's Order of May 26,2006 (See attached " MOTION OF DEFAULT").

 Also, Farrow is respectfully requesting this Honorable Court to allow this form of document assertion- to show that the Defendants committed the oncoming described acts with complete disregard toward the United States Constitution; rights proscribed to protect residents in Her (The United States') jurisdiction, including state inmates (such as Farrow) from unlawful acts and/or unconstitutional authoritative abuse of person(s) and power; specifically, those actions and lack of actions which violated the *First Amendment Right–* and relative "et cetera" rights- ***guaranteed*** Farrow - while Farrow was in the custody of the Defendants.

 As grounds for these respectful documents assertion Farrow hereby submit the oncoming numerical response.

## 1. INTRODUCTION

As of July 10, 2006 Farrow was place on parole status, and is currently residing in the City Of Tallassee, Alabama.

Farrow shall show that the Defendants exhibited blatant disrespect for this Honorable Court's jurisdiction in this matter, and Farrow's complaint in this styled cause have genuine issues of material facts; therefore, the Defendants are not entitled to summary judgement.

In like manner, Farrow shall show that the Defendants are committing the act of perjury while swearing to know little and/or nothing about Farrow's complaint, and that the Defendants are committing the act of perjury by entering "not guilty" pleas.

Farrow shall prove that a 42 USC Section 1983 is the proper course of action in this matter.

Farrow hereby submit the following statement/affidavit; documented evidence; and case citing/law in support of Farrow's complaint (See EXHIBITS).

Congruently, the following are the facts of this case. However, the following is submitted as a matter of necessity, in order to secure Farrow's complaint against the proper Defendants, and to show the justification of Farrow's complaint. (See Motion To Amend Jane/John Doe – Defendants)

## 1. PLAINTIFF'S RESPONSE

Farrow hereby swears under penalty of perjury that the following listed occurrences and unconstitutional violations against Farrow were unlawfully and unconstitutionally harmful to Farrow by the Defendants. The Defendants disregarded Farrow's efforts to avoid the said violations, and did the latter said with an absolute disregard to Farrow's efforts to avoid bringing this matter before this Honorable Court ***long before*** this matter reached this junction.

*DEFENDANTS' RESPONSE:*
...*"1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint, as amended and demand strict proof thereof."*...

1.  **FARROW STATES...** During December 7, 2000 until May 2005 Farrow filed and pleaded a 42 USC Section 1983 Civil Action Complaint against certain ADOC's employees (namely, certain Correctional Medical Services Incorporated – CMS's employees). (See Westlaw 320 F. 3d 1235)

2

The above said complaint remained active in this Honorable Court until May of 2005 – with the Defendants consistently trying to avoid a jury trial, before an agreement was forced/ _entered_ [1] during the latter said month. '

However, Farrow's First Amendment right- to be free from retaliation for exercising free speech- was violated consistently, and was complained about to both Farrow's attorney and ADOC's Officials consistently by Farrow.

The Defendants made a mockery out of Farrow's mental state, once said agreement was forced entered, by saying and pretending Farrow's fears and concerns for Farrow's safety and well being were the products of a mental disorder. Instead, Farrow's fears and concerns for Farrow safety were the products of the Defendants' actions toward Farrow.

However, the Defendants – while submitting a host of inadmissible evidence to Farrow and this Honorable Court – submitted all of Farrow's mental health record, but were certain to submit misleading mental health documents with out- of- date medical record in this lawsuit.

To be more specific, the Defendants forward a number of up- to- date mental health medical record – with the out- of- date bundle of medical record submitted with the Defendants' frivolous and malicious response to Farrow's complaint.

Namely, the Defendants submitted an honest and adequate response with a complete set of up- to- date file of Farrow's mental heath records - compiled by the _PSYCHIATRIST (?)_ at the Kilby Correctional Facility (whose name is unknown by Farrow); Dr. Banerjee, Psychiatrist, and Dr. Brun, Clinical Psychologist of Easterling Correctional Facility during or between April 19,2005 and July 10, 2006. (See **EXHIBITS -Mental Health Record).**

However, because Farrow can't make a standing colorable supplementary response toward the Defendants' use of Farrow's out- of- date medical record,

-And neither can Farrow does the latter said by using record beyond the two-year statue of limitation –

Farrow is helpless other than to recline from addressing irrelevant matters; thus, stating the same is inadmissible evidence for the Defendants to submit in this Honorable Court – especially without a justifiable cause.

1. All of the Plaintiff's claims under 42 USC Section 1983 are subject to the two year statute of limitations mandated by **Owens v. Okure,** 488 U. S. 235 (1989), and confirmed by **Jones v. Preuit & Mauldin,** 876 F. 2d 1480 (11th Cir. 1989) _(en banc) (Jones_ ll.)

Nevertheless, Farrow has a set of admissible recorded evidence that is compatible to the admissible portion of the record the Defendants submitted. Farrow has record that the Defendants failed to submit to this Honorable Court. That the Defendants' lies and blatant disrespect for the United States Constitution and this Honorable Court may cease

---

[1]Farrow submitted adequate concerns about the said violations to the said Defendants long before this junction. Moreover, the evidence will show before and after Farrow was deceived, intimidated into entering and accepting the terms of an unlawful settlement agreement – referring to the December Complaint- the Defendants refused to adequately respond to and/or take action to protect Farrow from said violations.

at this junction, Farrow has submitted evidence that Defendants that the Defendants were well aware of Farrow's complaint, mental health, and predicament in over enough time to resolve this matter - long before this cause of action.  (See **EXHIBITS** *-Letters To The Warden & Commissioner).*

*DEFENDANTS' RESPONSE:*
*2. The Defendants plead not guilty to the charges in the Plaintiff's Complaint, as amended." ...*

2.  **FARROW STATES...** Farrow is a type-two diabetic, and Farrow health requires that he have dental care at least once a year. However, because of the increase in the negative responses Farrow received from <u>former **CMS's employees – those of whom were assigned to the Easterling Correctional Facility-**</u> upon Dr. Marvin West return to Easterling Correctional Facility as an employee of PHS, Farrow was denied transfer and/or options to see another dentist. Neither was Farrow afforded an opportunity to visit a dental hygienist outside of Dr. Marvin West's presence because Farrow filed a law suit against said; thus, stating a retaliation claim against the Defendants. Notwithstanding the fact that the said dentist tried to avoid a jury trial for several long years while Farrow was being systematically retaliated against, Farrow's fears were of a legitimate origin.  Though it seemed the Defendants found pleasure in tormenting Farrow for filing said lawsuit, Farrow is confused as to how such as the Defendants can lie – **IN THE EYES OF GOD AND MAN – about** the Defendants' awareness of Farrow's mental state, serious medical needs, and the Defendants' actions and lack of actions against Farrow for filing said lawsuit.

3.  When Farrow requested a temporary transfer for the sole purpose of dental treatment, by a request made to Captain Knox, Captain Knox told Farrow that he wasn't special; plus, ADOC didn't have the time or manpower to carry Farrow to see another dentist. Captain Knox further stated that he didn't believe that Dr. West would do anything to jeopardize his future messing with Farrow.

4.  Nevertheless, Farrow filed a legitimate civil complaint against Dr. West for unlawful and deliberate indifference to Farrow serious medical needs prior to said request.  Said complaint was pending after being remanded from the United States Court Of Appeals For The Eleventh Judicial Circuit, and was headed for trial in this Honorable Court before the Defendants intensified their acts of illegal and unconstitutional retaliation against Farrow for filing the same said lawsuit.

5.  Farrow was absolutely afraid to accept treatment from and in the presence of Dr. Marvin West, and it was made clear to the Defendants how Farrow feel, mentally. (*Examine* EXHIBITS- *where on many occasions Farrow made the Defendants aware of Farrow's situation and Farrow's serious medical needs and Farrow's predicament).*

*DEFENDANTS RESPONSE:*

*"3.   The Plaintiff's Complaint, as amended failed to state a claim against the Defendants for which relief can be granted.*

*4.   The Defendants affirmatively deny any and all alleged claim by the Plaintiff.*

*5.   The Plaintiff is not entitled to any relief requested in the Complaint, as amended."...*

3.   **FARROW STATES...** The Plaintiff (Farrow) was participating in a number of ADOC's rehabilitative programs prior to and during the process of the said civil action, and Farrow resided at the Easterling Correctional Facility from June 1999 until April 18, 2005. During April 18, 2005 Farrow was transferred to the Kilby Correctional Facility on the pretext that Farrow was to appear in this Honorable Court. However, the evidence shows that Farrow was transferred for the reclusive purpose of retaliating against Farrow for filing said lawsuit, and that Farrow was transferred to the said facility for the reclusive purpose to intimidate, threaten, and lied about to other ADOC Officials and fellow inmates  (See EXHIBIT S - Accomplishments).

4.   Farrow saw a different dentist performing dental services on an inmate patient, so Farrow placed a " sick call" request to see the dentist while at Kilby Correctional Facility. Farrow was not reluctant neither afraid to see other dentists outside of Dr. Marvin West presence. However, Farrow was denied treatment because he wasn't a member of the "permanent party staff of inmates" assigned to the latter said facility. ( See **EXHIBITS** - Medical Request Forms )

5.   Shortly – within days- after Farrow was denied an opportunity to have Farrow's lower removable partial denture replaced outside of the presence of Dr.Marvin West, Farrow was summoned to the Dental Laboratory in the same and latter said facility. Upon Farrow's arrival at said laboratory, ADOC's Correctional Officer Caldwell requested information from Farrow and ordered Farrow to enter said dental laboratory. Farrow obeyed said order.

**THE FOLLOWING IS FARROW RESPONSE TO THE DEFENDANTS'
FRIVOLOUS AND MALICIOUS DEFENSE FROM CLAIMS #6 THROUGH
CLAIM #31- BECAUSE A 42 USC SECTION 1983 CIVIL COMPLAINT IS THE
TRUE CAUSE AND COURSE OF ACTION IN THIS MATTER.**

6.   **Upon entering said laboratory Farrow encountered an[2] unidentified female of Negroid decent- dental hygienist; Dr. Marvin West, Dentist, and another male of Negroid decent. Farrow did not believe the environment to be a safe**

---

[2] The reference made toward gender and race is for identification purposes only.

environment because of the unkind stares Farrow received from the other said persons.

Dr. West appeared to be having a conversation with the unidentified male [3], and the said dental hygienist pointed to a chair and told Farrow – in an unkind tone of voice – to " sit down!" Farrow sat in the chair the said dental hygienist told Farrow to sit in. Once Farrow was seated, the said dental hygienist gave Farrow a consent form to sign. The said dental hygienist told Farrow to read the consent form and sign it.

Farrow read the consent form.

Nevertheless, Farrow did not approve of the agreement in the consent form – which basically said that if any unpleasant thing (including death) should happen to Farrow during said agreement the Defendants could not be held liable, so Farrow requested a " waiver"[4] (a Release of Responsibility Form) because Farrow was afraid to accept treatment in the presence of Dr. West and given the language of the consent form.

In like manner, Farrow was afraid of the looks and behaviors of the said three persons in the said dental laboratory.

7.  She (the dental hygienist / Helen Ross -? -) spoke with Dr. West about something, and Dr. West told her to look in the second desk draw of the first desk (the first desk one shall come near upon entering the said laboratory). She did as he (Dr. West) instructed her. She looked in said desk draw, retrieved a "waiver"[4], and gave it to Farrow to sign. Farrow used the latter said desk for writing support.

---

[3] The unidentified male's name is reportedly Mr. Lawrence, Activity Director/ Coordinator (?) for Mental Health Management Inc., and the unidentified woman's name is said to be, Helen Ross, RPH. ( See Medical Record )

[4] Most Alabama Inmates refer to a *Release Of Responsibility Form as a "Waiver"*

# *ACCOMPLISHMENTS*



# Certificate of Completion

## The Alabama Department of Corrections

### Certifies That

FARROW, DEAN 111719

has successfully completed all three phases of the 6-month
Crime Bill Zero Tolerance Drug Treatment Program at EASTERLING C.F.

**From:** June 21, 2004 **to** December 10, 2004

Stephanie Scott, BS, CCJP
Counselor

Psychological Associate II/Warden

# WALLACE COMMUNITY COLLEGE

SPARKS CAMPUS

RECOGNIZES

## Dean E. Farrow

for completion of the

### Drafting Technology Program



_Linda C. Young_
PRESIDENT

July 31, 2003
DATE

# WALLACE COMMUNITY COLLEGE

SPARKS CAMPUS

RECOGNIZES

## Dean Farrow

for serving as a tutor for the

### Drafting Technology Program

July 31, 2003

DATE

PRESIDENT

*Letters To The Warden & Commissioner*

Mr. Dean Effarage Jarrow, #111719- 7A-12
Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 36017
November 14, 2005


Ms. Mosley and Mr. Campell;
  I simply regret having to address you about
the following issues, but after having spoke with
my family members and Attorney about the matter
in the past, I am uncertain whether the con-
spirators of said issues include you, or whether
the subordinated of the established chaing of com-
mand have perpetrated the oncoming violations
of law without your knowlege and against your
best-legal- interest.
  It is my sincere hope that during course of
the oncoming explanations, inquisitions, and re-
quests I do not appear as one given to friva-
lous complaints or a "stiffneck"; therefore, please
bear with my efforts to put forth the problems,
and hopefully the matter shall be settled at
this junction.


  On or about April 19, 2005 I, the above said
inmate, was unfairly and unlawfully transfer-
red to Kilby Correctional Center (KCC) on a

1st/1 pages

purposely false (conspiratorial) claim that I was scheduled to appear in United States (Federal) Court in Montgomery, Alabama. There was, in fact, a court order — one highly questionable and judicially improper — requiring my presence in the said Court; nevertheless, after my Attorney filed a motion complaining about the judicially improper court order, the same said Court issued another "Court order" which made it absolutely clear that the improper court order was thereupon VACATED. I deemed it a major part of a conspiracy.

However, your subordinates of the Alabama Department of Corrections have failed to assert a justifiable reason for said transfer.

The said transfer occurred during the fourth (4th) month of my participation in a mandatory six (6) months "aftercare program" designed for inmates whom completed "Crime Bill SAP" (here) at Easterling Correctional Facility; moreover, I have concluded — with sufficient evidence — the said transfer was specifically an action — combined with numerous of other specific subsequent actions —(each) committed as illegal acts of retaliation because of a civil rights litigation (lawsuit) I filed against a set of former Correctional Medical Services Inc. (CMS) employees, and because of the defendants efforts to avoid a jury

trial in the said cause had failed.

Though I believe it is unnecessary to submit the specific details at this junction, at the said center, too, I was forced to endure other forms of unfair and _unlawful retaliations_ as responses to my efforts in the same said cause — _documented copies_.

In one specific incident at KCC I was verbally abused by an Alabama Department of Corrections officer in response to my initial attempt to file a legal and legitimate _medical complaint_. In like manner, I was given an unfair and _unfavorable parole review because of program incompletion_; unfairly _not granted_ a favorable and timely _annual progress review_; and unfairly _placed in violent situations_ and _unsanitary living conditions_ — without any justifiable cause. Meanwhile my _legal mail_ was unfairly being held at Easterling (here) — all of the aforesaid, too, exist as _a product of illegal retaliation against me for filing_ a necessary 42 U.S.C.§1983 _Civil Rights Complaint_ against CMS Inc.

Nevertheless, the most urgent part of my complaint — hereupon — is that my life is being systematically placed in danger in _Violation of 18 U.S.C.§1513_; the First Amendment and the Eighth Amendment of my civil and human rights as proscribed therein the United States

Constitution; thus, the Alabama Constitution of 1901.

After said transfer, and inactment of said segments of the said unlawful actions against me at KCC, I was returned here (Easterling — on or about August 22, 2005), and after approximately four months-no court.

In spite of all my progress and/or <u>institutional accomplishments</u> and extra efforts to remain in a peaceful invironment with other inmates — I legally gained the "jair" privilage to be in the company of, or said living quarters with — I was intentionally given some of the most trying and difficult bed assignments outside of segregation, and the latter said bed assignments are still the pattern of placement for me at this time.

In like manner, I was <u>purposely placed in a violent situation</u> once I acquired the privilage to reenter the "aftercare program", and my complaints about said situation was purposely neglected. Meanwhile, the known bullies ungainly slandered my name, and tried provoking a physical altercation. When a verbal altercation finally provoked me into saying words to defend my honor, an Alabama Department of Corrections officer suspended me from the program <u>without the slightest opportunity to call witnesses</u> to prove <u>the facts of the incident</u>, with disregard to my protests.

During the latter said process I was summon-

ed to the "Administration ("Admin") Building" for an untimely progress review under a tone-setting "violent repeated offender" label.

Plus, it is explicitly expressed by the Members of the Alabama Board of Pardons and Paroles and the Members of the Alabama Department of Corrections Classification Officials that... "Inmates who are recommended to attend SAP and/or GED programs and failed to complete said programs will not be given a "favorable" parole and/or progress review."...

In my case the standards for receiving "favorable" parole review created a "liberty" interest because I have two (2)-concurrent-life sentences. Meaning parole is the only possible chance I have of leaving prison alive, and my leaving prison — at all — alive without a "favorable" parole review is not likely; unless per adventure the United States Courts grant me injunctive relief. Technically, if I don't receive injunctive relief, and I am not given an equal opportunity to complete the "aftercare" program, I am serving a sentence of life without the possibility of parole — for an alleged offense of unlawful distribution, two (2) count, and illegal drugs with a street value of $30.00 is the extent of the reason I am back in prison.

Actually, I am being reclusively retaliated against

for filing a civil complaint against CMS in the United States Courts.

Nevertheless, the LORD GOD knows that I am an addict who relapsed, but under the definition of the State of Alabama law of "unlawful distribution" I am actually/factually incarcerated for being and behaving the same as the majority of crack addicts or drug addicts throughout America.

Other unmentioned facts regarding my classification status by the Alabama Department of Corrections—

Throughout my nearly thirty-two (32) years of (on and off drug use) drug addiction, I've not even participated in (neither knew the importance of) a substance abuse treatment program until I entered and completed Crime Bill SAP here at Easterling. Though I was terribly exposed to second-hand smoke @ KCC, I wasn't tempted to smoke. — smokeable drugs were my drugs of choice —

Nevertheless, the threat of violence is governing my movement, and my name has been photo-routinely slandered. So, my none participation in the substance abuse program there (KCC) and now is an act to avoid violence. I am heterosexual.

Easterling has a nice outward appearance, but it is defiled by the sins of imprisonment. The grass is beautiful here and the buildings are painted nicely, too, but as a result of inadequate medi-

6 & 11 pages

cal attention and malnutrition I became a dia-
betic here — @ Easterling, though there were fact-
ual and/or early warning signs of my condition
throughout July 1999 - July 2001, and the latter said
disorder could have been delayed or prevented
with early treatment and medical advice throughout
its developing stages — of said period.

Now I am a type II diabetic, and at the age
of 53 years of age I have accumulated very lit-
tle social security benefits. Meaning, too the long-
er I'm forced to wait before I am allow-
ed to reenter the work force/society the great-
er the hardship I'll likely have to endure.

Therefore (aforementioned and oncoming), unlaw-
ful acts of retaliation is damaging me more
than it would someone younger — per adventure
the said offense against me such of the same
degree for the younger person.

I have been incarcerated eight (8) years for
an alleged crime which is said to have in-
volved unlawful distribution of controlled sub-
stances (2 counts) with a street value of $30.°°.
I was arrested during 1997, and I've been
incarcerated since.

During said time (1997) — though I had been
available to the law enforcement body —
I was arrested on a secret indictment for

7. 7if pages

the said alleged offenses — which were said to have occurred four (4) months prior to said arrest, and I wasn't allowed to see the evidence being used against me until three (3) days before my trial — April 1999.

It was extremely unlikely for me to provide my defense counsel with any assistance in my defense because I was experiencing mental disorders (with drug addiction) during my arrest (1999 until approximately December of said year), and during (@) my trial I was under the influence of so much psychotrophic medications that it was factually hazardous for me to operate a machine as simple as a lawnmower.

The appellate process was denied because of ineffective assistance of counsel during direct appeal and procedural issues, and not denied because of an analysis involving the actual facts of the some said alleged offenses.

I was high — illegally intoxicated — in an environment infested with crime. I am not a drug dealer. Neither do I undermind the damages I have caused to my family and myself, but I do believe that a large number of people in my community learned a valuable lesson by seeing me destroy myself one year after sobriety.

8 of 11 pages

I simply did not receive a fair trial in this matter; nevertheless, the issues I wished to present on appeal would have likely afforded me a new trial in the same said matter.

Meanwhile, for reasons I am uncertain why I am not able to understand — from an actual and imaginary points of views — the State of Alabama laws permit the spending of more money for an alleged $30.00 crime I've been unfairly convicted of committing than the same law — of the Citizens — spent for the entire combination of my criminal acts of the past when there weren't any doubt of my guilt.

In like manner of the Citizens, I am suffering an unreasonable amount of damages because of a foolish relapse.

The point I am attempting to assert is that I am misclassified, too.

However, attaining to the point of this document, I wish to acquire knowledge of your positions in this conspiracy against my life, and not the mental disorder I am obviously acquiring as a result of said conspiracy.

For example:

Assuming it is not your plan, I am respectfully requesting that you have your subordinates submit affidavits explaining their positions in this

matter of my claim and why such a position is taken.

Starting with an explination for said transfer — April 19, 2005 — but not limited to said transfer.

Fact (1.) During March 7, 2005 I received a questionable court order (allegely) entered by United States Magistrate Judge Vanzetta Penn McPherson, which read:

...: "Hearings:
Pretrial Telephone Conference: That this cause is set for a pretrial telephone conference at 10:00 a.m. on 28 March 2005, to be arranged by counsel for the defendant. The persons having custody of the plaintiff are to produce him at the telephone conference"...

Because the latter said order was unusually improper, my attorney filed a motion requesting that said court order be vacated.

Fact (#2.) During 22 March, 2005 the same said Court and same said Honorable Magistrate Judge (allegedly) issued an order; which read ...: "The court's order entered on March

10 of 11 Pages

2005 (Doc. #37) is hereby VACATED, thus cancelling the pretrial conference set for 28 March 2005 (by telephone), and the evidentiary hearing set for 27 April 2005."..

## Legal inquisitions: Cancellations

Why was not I produced at the telephone conference; and why are there not any records of said production and conference; and why was I transferred to Kilby Correctional Center and unlawfully intimidated by - both - the Alabama Department of Corrections officials and Prison Healthcare encorporate and/or unlawfully retaliated against after said order was plainly VACATED.[2]

I made several verbal complaints and filed two written complaints (medical and institutional) at KCC. Moreover, and because of the intimidation and numerous threats I am enduring by the Grace of GOD, I am humbly requesting that you give this matter your attention; and/or inform me of your position in the some said matter.

Thank you.

Inmate: Dean Effarage Farrow
A.P.S: #111719
Dorm & Bed: 7A-12
Date 11-14-05
No of 11 pages

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

1. Article Addressed to:

Mr. D. Campbell
Al DOC
101 S Union St.
Montgomery Al 36130

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)      7005 1160 0002 7981 3457

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
11-28-06

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

1. Article Addressed to:

Ms. Gwendolyn Mosley
209 Wallace Drive
Clio, Al 36017

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)      7005 1160 0002 7981 3440

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540